## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DEXTER HARRIS,

                Petitioner,

                                    CIVIL NO. 2:12-CV-13658

v.                                 HONORABLE SEAN F. COX

                                    UNITED STATES DISTRICT COURT

KENNETH McKEE,

                Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

Dexter Harris, ("Petitioner"), incarcerated at the Bellamy Creek Correctional Facility in Ionia, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his conviction for first-degree first-degree criminal sexual conduct, Mich. Comp. Laws, § 750.520b, and being a fourth felony habitual offender, Mich. Comp. Laws, § 769.12. For the reasons stated below, the petition for writ of habeas corpus is **DENIED WITH PREJUDICE.**

### I. Background

Petitioner was convicted of the above offenses following a jury trial in the Monroe County Circuit Court.

The victim testified that in May of 2006, she and Patrick Miller went looking to purchase crack cocaine after drinking together in a bar. (Tr. 1/3/07, pp. 94-95, 191). Miller encountered Petitioner and asked him if they could get some crack. Petitioner took the

1

victim and Miller to another man's house to smoke crack cocaine together. Three other men were at the house, including Jacob Hood. The three continued smoking crack cocaine and drinking alcohol for about 12 hours until the afternoon of the following day. (*Id.* at pp. 96-97, 192-93, 200-05, 264-265).

Miller eventually left the house to go to an ATM to obtain more money. (*Id.* at pp. 97-99, 193). After Miller left, Petitioner ordered the victim to remove her shoes, her top, and her brassiere. When the victim refused, Petitioner insisted that she comply. Petitioner pushed the victim onto a bed, got on top of her, and began removing his pants. The victim tried to resist Petitioner's advances. Petitioner pulled the victim's pants down, pried her legs apart, and inserted his finger into her vagina. Petitioner then pulled his own pants off and sexually assaulted the victim by placing his penis into her vagina. (*Id*. at pp. 99-102.)

The victim got dressed and left the house, taking Miller's bicycle and riding for a while, before calling a friend to pick her up. (Tr. 1/3/07, pp. 103, 218). The victim subsequently went to Mercy Memorial Hospital, where the staff called a police officer and performed a sexual assault examination. (*Id*. at pp. 105-06).

Ginger Boismier was the victim's friend. She testified that the victim called her and asked her for a ride home. Boismier testified that the victim informed her that she had been raped. (Tr. 1/3/07, p. 222).

Mary Noel was a registered nurse who helped examine the victim at the hospital. Noel was a sexual assault examiner nurse who is specially trained to examine alleged sexual assault victims and interpret their injuries. (Tr. 1/3/07, pp. 152-55). Noel testified that the

2

victim cried uncontrollably throughout the examination. (*Id*. at pp. 159, 168-69).  Noel discovered a tear to the victim's labia majora, and two tears to her labia minora, all of which had been inflicted no more than two or three days before the examination. (*Id.* at pp. 162-65).  Noel testified that victim's vaginal wall was irritated and reddened, as though "some kind of friction had occurred there to irritate the lining." (*Id*. at p. 166).  Noel testified that the tears found in the victim's vaginal area were consistent with blunt force trauma, a determination that was made based on the victim's statement to her. (*Id.,* pp. 163, 174-75).

Petitioner called several defense witnesses.  Booker Hudson and John Calvert both testified that the victim informed the men that she would have sex with Petitioner in exchange for more crack cocaine.  The victim also propositioned John Calvert for $ 50.00, but he told her that he "didn't see $50 worth."  The victim "opened her blouse and zipped her pants down."  Calvert told her to: "Hold it right there.  Just keep that pose till I get back."  Calvert, however, left the house and never returned. (*Id.,* pp. 251, 260-61).  Petitioner likewise testified that the victim had consensual sex with him in exchange for crack cocaine. (*Id.,* pp. 271-72, 276, 280).  The victim denied ever propositioning Petitioner or the other men to exchange sex for cocaine. (*Id.*, p. 98).

Petitioner's conviction was affirmed on appeal. *People v. Harris,* No. 276767 (Mich.Ct.App. April 8, 2008); *lv. den.* 482 Mich. 897, 753 N.W.2d 183 (2008).  Petitioner then filed a post-conviction motion for relief from judgment, which was denied. *People v. Harris,* No. 06-35464-FC (Monroe County Circuit Court, August 24, 2010).  The Michigan appellate courts denied Petitioner leave to appeal. *People v. Harris,* No. 304230

3

(Mich.Ct.App. November 16, 2011); *lv. den*. 492 Mich. 852, 817 N.W.2d 77 (2012).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner is being detained in violation of his constitutional rights where prosecutorial misconduct denied Petitioner a fair trial and due process of law, and where the State court decision denying relief on this claim was contrary to, or constituted an unreasonable application of clearly established federal law.

II. Petitioner is being detained in violation of his constitutional rights where ineffective assistance of trial counsel deprived Petitioner a fair trial and due process of law, and where the State court decision denying relief on this claim was contrary to, or constituted an unreasonable application of clearly established federal law.

III. Petitioner is being detained in violation of his constitutional rights where the cumulative effect of error in the trial court deprived Petitioner of a fair trial and due process of law, and where the State court decision denying relief on this claim was contrary to, or constituted an unreasonable application of clearly established federal law.

IV. Petitioner is being detained in violation of his constitutional rights where Petitioner was denied a fair trial and due process of law when the trial court allowed the introduction of prejudicial testimony by an expert witness that exceeded the scope of permissible under Michigan law, and where the State court decision denying relief on this claim was contrary to, or constituted an unreasonable application of clearly established federal law.

V. Petitioner is being detained in violation of his constitutional rights where the trial court's failure to instruct the jury to only consider properly admitted evidence in its deliberations denied Petitioner due process law and a properly instructed jury, and where the State court decision denying relief on this claim was contrary to, or constituted an unreasonable application of clearly established federal law.

VI. Petitioner is being detained in violation of his constitutional rights where Petitioner was denied an impartial jury drawn from a fair cross-section of the community, and where the State court decision denying relief on this claim was contrary to, or constituted an unreasonable application of clearly established federal law.

4

VII. Petitioner is being detained in violation of his constitutional rights where the State courts, the State's attorney, and Defendant's own counsel have repeatedly and systematically withheld DNA and rape kit evidence favorable to Petitioner and material to Petitioner's guilt, while repeatedly denying Petitioner's request for this evidence.

VIII. Petitioner received ineffective assistance of counsel from his appointed appellate counsel where counsel failed to raise meritorious claims on Petitioner's appeal by right; the State court decision denying relief on this claim was contrary to, or constituted an unreasonable application of clearly established federal law.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law

of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Habeas relief is not appropriate unless each ground which supported the state court's decision is examined

6

and found to be unreasonable under the AEDPA. *See Wetzel v. Lambert*, 132 S. Ct. 1195, 1199 (2012).

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III.  Discussion

**A.  The procedural default issue.**

Respondent contends that a number of Petitioner's claims are procedurally defaulted either because he failed to object to the alleged error at trial, failed to raise the claims on

direct appeal, or failed to exhaust the claim and now has no state court remedy remaining with which to do so.

This Court notes that procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Petitioner claims that his trial counsel was ineffective for failing to object to the prosecutorial misconduct that he alleges in his first claim and that his appellate counsel was ineffective for failing to raise certain of his claims on his direct appeal. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of the claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

**B. Claim # 1. The prosecutorial misconduct claims.**

Petitioner first claims that the prosecutor deprived him of a fair trial by engaging in various forms of misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review."

8

*Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).   A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45.   The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F. 3d 1348, 1355 (6th Cir. 1993)).   Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 131 S. Ct., at 786–87).   This is particularly so, "because the *Darden* standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations[,]'". *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. at 664).

Petitioner first contends that the prosecutor improperly bolstered the victim's credibility with prior consistent statements that she made to her friend.   There is no Supreme Court decision which holds that the improper use of a witness's prior consistent statements

9

violates the federal constitution. *See Drain v. Woods,* 902 F. Supp. 2d 1006, 1037 (E.D. Mich. 2012). Thus, any use by the prosecutor of the victim's hearsay statements to her friend to bolster her testimony did not amount to prosecutorial misconduct. *Id.*

Petitioner contends that the prosecutor improperly appealed to the sympathy of the jury.

During opening statement, the prosecutor said:

Eventually [the victim] went to the hospital, and you will find it remarkable, I think, that all along the way, whether it's with a close friend to whom she did not want to admit what had happened, she didn't want to say what happened. And what does that say about our society, where even now, you know, even now we think we have a much more progressive and humane and understanding thoughts about sexual assault, even now, the first reaction of a victim, of a woman, is to be deeply, deeply ashamed and sad and blaming themselves, because she wasn't even-because she didn't tell her best friend for a couple of minutes or more, she was so ashamed. But she did.

(Tr. 1/3/07, p. 84).

In his closing rebuttal, the prosecutor stated:

She said she was ashamed. And, again, in this day and age, the way people-the way people talk about rape now, it's unbelievable, and yet it's true. Women that are attacked feel that shame.

(Tr. 1/4/07, p. 333).

Petitioner is not entitled to habeas relief on his claim. First, the prosecutor's comment, even if it was an attempt to invoke sympathy with the jury, would not entitle Petitioner to habeas relief because the remark was relatively isolated, was not extensive, and was only a small part of the closing argument that focused on summarizing the evidence.

10

*Byrd v. Collins,* 209 F. 3d 486, 532 (6th Cir. 2000). This portion of Petitioner's claim would also be defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision (Tr. 1/4/07, p. 337). *See Cockream v. Jones,* 382 F. App'x. 479, 486 (6th Cir. 2010).

Petitioner further claims that the prosecutor's above mentioned comments also amounted to an attempt to get the jurors to convict Petitioner as part of their civil duty.

With regards to civic or societal duty arguments, the Sixth Circuit has noted that, "[u]nless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not *per se* impermissible." *Byrd v. Collins,* 209 F. 3d at 539 (quoting *United States v. Solivan*, 937 F. 2d 1146, 1151 (6th Cir. 1991)).

In this case, the prosecutor's "less than-pointed-remarks" did not rise to the level of remarks designed to incite prejudice in a jury, thus defeating petitioner's "civic duty" argument claim. *See Puetas v. Overton,* 168 Fed. Appx. 689, 701 (6th Cir. 2006). Moreover, the prosecutor did not make an improper civic duty argument, because the prosecutor's comments appeared to be made in response to the defense's argument that the victim's hesitation in informing her friend about the sexual assault called into question the credibility of her sexual assault allegations. *See Knapp v. White,* 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003). Additionally, the trial court's instruction to the jury that they must not let prejudice or sympathy influence their decision defeats petitioner's claim that he was deprived of a fair trial because of an improper civic duty argument. *Id.* Lastly, Petitioner points to only two comments made by the prosecutor as part of a nine page opening statement and a nineteen

11

page closing argument. (Tr. 1/3/07, pp. 79-87; Tr. 1/4/07, pp. 301-12, 330-37).   Because the prosecutor's civic duty argument was an isolated part of the opening and closing argument, Petitioner is not entitled to habeas relief. *See Martin v. Foltz,* 773 F. 2d 711, 716-17 (6th Cir. 1985).

Petitioner next contends that the prosecution improperly vouched for the complainant's credibility by making the following comment in rebuttal:

> [The complainant] wanted to get with her friend so bad, and she called her, and she couldn't bring herself to tell the truth right away, but she did very soon, because of the shame and all the things she was feeling.

(Tr. 1/4/07, p. 336).

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999)(internal citations omitted).  "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F. 3d 546, 550 (6th Cir. 1999)(internal citations omitted). However, even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United*

12

*States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

Petitioner is not entitled to habeas relief on this claim because the prosecutor's comments were brief and isolated, in that they were part of a much larger nineteen page closing argument that focused on the evidence. An isolated instance of vouching does not make a state trial so constitutionally infirm so as to justify federal habeas relief. *See e.g. Joseph v. Coyle,* 469 F. 3d 441, 474 (6th Cir. 2006). Moreover, the comments made by the prosecutor were not improper because they appear to have been responsive to defense counsel's argument. *See Smith v. Jones,* 326 Fed. Appx. 324, 328 (6th Cir. 2009). Finally, the jury was instructed that the lawyers' statements and arguments were not evidence (Tr. 1/4/07, p. 339). This instruction by the court cured any prejudice that may have arisen from any improper vouching. *Byrd,* 209 F. 3d at 537.

Petitioner lastly claims that the prosecutor improperly minimized or misstated the concept of reasonable doubt by arguing that reasonable doubt has "got to be like a rock...like an anchor...like something you can't move." (Tr. 1/4/07, p. 336). As the Michigan Court of Appeals indicated in rejecting Petitioner's claim, *Harris,* Slip. Op. at * 5, the trial court gave the jurors the correct instruction on reasonable doubt. (*Id.,* at p. 338). Any possible misconduct by the prosecutor in minimizing the concept of reasonable doubt was cured by the fact that the jurors were given the correct instruction on reasonable doubt. *See U.S. v. Henry,* 545 F. 3d 367, 384 (6th Cir. 2008). Petitioner is not entitled to habeas relief on his first claim.

**C. Claims # 2, # 7, and # 8. The ineffective assistance of counsel/exculpatory**

13

**evidence claims.**

The Court will consolidate Petitioner's second, seventh, and eighth claims for judicial clarity. In his second claim, Petitioner contends that he was deprived of the effective assistance of trial counsel. In his seventh claim, he alleges that the prosecutor withheld DNA evidence from him and that his counsel failed to discuss this evidence with him. In his eighth claim, he alleges that appellate counsel was ineffective for failing to raise some of his claims on his appeal of right.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt*, 395 F. 3d 602, 617 (6th Cir. 2005). The Supreme Court's holding in *Strickland*

places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

In addition, a reviewing court must not merely give defense counsel the benefit of

15

the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Petitioner first contends that trial counsel was ineffective for failing to object to the prosecutorial misconduct that he alleges in his first claim.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001). Because the Court has already determined that the prosecutor's comments did not deprive Petitioner of a fundamentally fair trial, he is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *See Slagle v. Bagley,* 457 F. 3d 501, 528 (6th Cir. 2006).

Petitioner next contends that trial counsel was ineffective for failing to call Jacob Hood to testify that he saw the victim several times during the night and she never indicated that she had been raped. Trial counsel, however, called several witnesses, including Booker Hudson, John Calvert, and Petitioner himself to testify that the victim offered to have consensual sex with Petitioner and the other men in exchange for crack cocaine. There was also substantial evidence presented that the victim had consumed large amounts of alcohol and crack cocaine on the night in question. Petitioner was not prejudiced by counsel's failure to call Jacob Hood because his testimony was cumulative of other evidence and

16

witnesses presented at trial in support of petitioner's claim that the victim had consented to have sex with him. *Wong,* 558 U.S. at 22-23; *See also United States v. Pierce,* 62 F. 3d 818, 833 (6th Cir. 1995). In this case, the jury had significant evidence presented to it that the victim had agreed to have sex with Petitioner. Because the jury was "well acquainted" with evidence that would have supported Petitioner's claim that the victim had agreed to have sex with him, additional evidence in support of Petitioner's defense "would have offered an insignificant benefit, if any at all." *Wong,* 558 U.S. at 23.

Petitioner next contends that trial counsel was ineffective for failing to call the victim's ex-husband to testify for the defense. Petitioner, however, failed to provide an affidavit from the victim's ex-husband to this Court. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Petitioner has offered no evidence beyond his own assertions as to whether the ex-husband would have been able to testify and what the content of the witness' testimony would have been. In the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to call the ex-husband to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551, 557 (6th Cir. 2007).

Petitioner next contends that his trial counsel was ineffective for failing to submit a witness list. Petitioner does not indicate how he was prejudiced by counsel's alleged failure to provide a witness list. Petitioner's counsel presented the testimony of Hudson, Calvert, and Petitioner at petitioner's trial. Petitioner does not indicate that he was prevented from

17

calling any witnesses at trial. Because Petitioner has failed to show that he was prejudiced by counsel's alleged failure to file a defense witness list, he is not entitled to habeas relief on his claim. *See e.g. Johnson v. Wolfe,* 44 Fed. Appx. 702, 719 (6th Cir. 2002).

Petitioner further claims that trial counsel was ineffective for failing to cross-examine witnesses. The record, establishes, however, that trial counsel did cross-examine the prosecutor's witnesses. This part of Petitioner's ineffective assistance of counsel claim is without merit.

Petitioner next claims that counsel was ineffective for failing to subpoena the victim's cell phone records because they would have shown discrepancies in the times of the various incidents from the night and morning in question that she testified to. Petitioner, however, did not attach a copy of the cell phone records to his state post-conviction motion or to his petition for writ of habeas corpus, nor has he shown which portions of the victim's testimony would have been impeached by these records, in light of the fact that the victim's testimony concerning the times of the events was often vague and imprecise. Petitioner has failed to show that his counsel was ineffective in failing to obtain and produce these telephone records because Petitioner failed to show, in light of the other evidence at trial, that such records would establish anything that could have changed the result of his trial. Accordingly, the Michigan courts did not unreasonably apply *Strickland* in rejecting his ineffective assistance of counsel claim. *See Davis v. Burt*, 100 Fed. Appx. 340, 346-47 (6th Cir. 2004).

Petitioner next contends that trial counsel was ineffective for failing to provide

Petitioner information concerning the DNA test results performed in this case or for failing to object to the prosecutor's alleged failure to turn over the DNA evidence to the defense. In his seventh claim, Petitioner contends that the prosecutor failed to disclose to the defense prior to trial the DNA evidence. The Court will discuss these claims together because they are interrelated.

To prevail on his seventh claim, Petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to punishment irrespective of good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985). In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the Supreme Court articulated three components or essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. "Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F. 3d 380, 388 (6th Cir. 2002).

Petitioner has failed to offer any evidence or argument to show that any of the DNA evidence contained exculpatory material. The burden is on a habeas petitioner to prove that evidence that is required to be disclosed to him under *Brady* was not disclosed to him. *Coe*

*v. Bell*, 161 F. 3d 320, 344 (6th Cir. 1998).  Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. *Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004).  "[M]ere speculation that a government file may contain Brady material is not sufficient" to prove a due-process violation. *United States v. Driscoll*, 970 F. 2d 1472, 1482 (6th Cir. 1992), *abrogated on other grounds by Hampton v. United States*, 191 F.3d 695 (6th Cir. 1999).  In light of the fact that Petitioner's defense at trial was that the victim consented to have sex with him, Petitioner has failed to show that any of this evidence exculpated him of this crime.  Petitioner is therefore not entitled to habeas relief on his *Brady* claim. *Burns,* 328 F. Supp. 2d at 724.

The standard of prejudice for an ineffective assistance of counsel claim is the same as the materiality requirement for a *Brady* claim. *See Hutchison v. Bell,* 303 F. 3d 720, 749 (6th Cir. 2002).  In light of the fact that this DNA evidence was not material to Petitioner's defense, trial counsel was not ineffective for failing to request its production, because there is no showing that the outcome of the trial would have been different had counsel requested the DNA evidence. *See e.g. Berry v. Palmer*, 518 Fed. Appx. 336, 340 (6th Cir. 2013); *cert. den.* 134 S. Ct. 485 (2013).  Petitioner is not entitled to habeas relief on his second and seventh claims.

In his eighth claim, Petitioner alleges that his appellate counsel was ineffective for failing to raise his third through seventh claims and the majority of his ineffective assistance of trial counsel claims on his appeal of right.

The Sixth Amendment guarantees a defendant the right to the effective assistance of

20

counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). None of the claims that were raised by Petitioner for the first time in his post-conviction motion for relief from judgment have any merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because none of the underlying claims can be shown to be meritorious, appellate counsel was not ineffective for failing to raise these claims on Petitioner's direct appeal. Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

### D.  Claim # 3. The cumulative errors claim.

Petitioner contends that he is entitled to habeas relief because of the cumulative error.

The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker,* 425 F. 3d 250, 256 (6th Cir. 2005). Petitioner is therefore not entitled to habeas relief on the grounds of cumulative error. *Id.*

### E.  Claim # 4.  The expert witness claim.

Petitioner next claims that the trial court erred in permitting Mary Noel, the registered nurse who treated the victim, to testify as an expert concerning whether the victim suffered from rape trauma syndrome and to testify that the victim's behavior and demeanor were

consistent with her having been sexually assaulted.

Federal habeas corpus relief does not lie for errors of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

The admission of expert testimony in a state trial presents a question of state law which does not warrant federal habeas relief, unless the evidence violates due process or some other federal constitutional right. *See Keller v. Larkins,* 251 F. 3d 408, 419 (3rd Cir. 2001). Thus, a federal district court cannot grant habeas relief on the admission of an expert witness' testimony in the absence of Supreme Court precedent which shows that the admission of that expert witness' testimony on a particular subject violates the federal constitution. *See Wilson v. Parker,* 515 F.3d 682, 705-06 (6th Cir. 2008). In light of the deferential standard afforded to state courts under the AEDPA, the trial court's decision to permit Mary Noel to offer opinion evidence concerning rape trauma syndrome and the victim's behavior and demeanor was not contrary to clearly established federal law, so as to entitle petitioner to habeas relief. *See e.g. Schoenberger v. Russell,* 290 F. 3d 831, 835 (6th Cir. 2002). Petitioner is not entitled to habeas relief on his fourth claim.

### F. Claim # 5.  The submission of unadmitted exhibits to the jury.

Petitioner next contends that the trial court erred in permitting the jury to view a letter written by Petitioner that had not been introduced into evidence and for failing to instruct the jury that it could only consider properly admitted evidence.

22

Petitioner's claim is completely meritless.  As an initial matter, the judge instructed the jury that they were only to consider properly admitted evidence in their deliberations. (Tr. 1/4/07, p. 339).  More importantly, when the jury requested a copy of the letter during deliberations, the trial court instructed the jurors that he could not give them the actual letter because it had not been introduced into evidence. (Tr. 1/4/07, pp. 352-53).

A federal court must apply the presumption of correctness to state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to rebut this presumption. *Bailey v. Mitchell*, 271 F. 3d 652, 656 (6th Cir. 2001).  In the present case, the trial court found that this unadmitted exhibit had never been submitted to the jury for their review during deliberations.  This is a factual finding that is presumed correct on habeas review. *See e.g. Jackson v. Shanks,* 143 F. 3d 1313, 1323 (10th Cir. 1998).  Because Petitioner has failed to rebut the state court's factual findings that this exhibit was never submitted to the jury, he is not entitled to habeas relief on his claim.

### G.  Claim # 6.  The jury composition claim.

Petitioner next contends that he was denied a fair jury because only one African-American was selected to serve on his jury and was removed from the jury after the prosecutor informed the court that this juror no longer lived in Monroe County but had moved to Washtenaw County.

Although a defendant has no right to a petit jury composed in whole or in part of persons of his or her own race, he or she does have the right to be tried by a jury whose members are selected by indiscriminatory criteria. *Powers v. Ohio*, 499 U.S. 400, 404

23

(1991)(internal citations omitted).  While states may prescribe relevant qualifications for their jurors, members of a community may not be excluded from jury service on account of their race. *Id.*

A defendant, however, may not challenge the makeup of a jury merely because no members of his or her race are on a jury, but must prove that his or her race has been systematically excluded. *Apodoca v. Oregon*, 406 U.S. 404, 413 (1972).  In order to establish a *prima facie* violation of the fair cross-section requirement, a defendant must show:

> (1) that the group alleged to have been excluded is a "distinctive group" in the community;
> (2) that the representation of that group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and
> (3) that the underrepresentation is due to the systematic exclusion of the group in the jury selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979).

"More than mere numbers must be provided to establish" that members of a particular ethnic or racial group are systematically underrepresented in the jury venire. *United States v. Greene*, 971 F. Supp. 1117, 1128 (E.D. Mich. 1997).  The strength of the evidence of underrepresentation of the group in the venire is only one factor to be considered in determining whether a *prima facie* violation of the fair cross-section requirement has been established.  Factors such as the nature of the process by which jury lists are composed and the length of time of underrepresentation, together with the strength of the evidence that purports to establish unfair and unreasonable representation also need

24

to be examined. *Id.* (citing to *Ford v. Seabold*, 841 F. 2d 677 (6th Cir. 1988)).

Petitioner failed to allege, much less show, that African-Americans were systematically excluded from jury service in Monroe County. Conclusory assertions of underrepresentation are insufficient to support a systematic exclusion claim. *See U.S. v. McCaskill*, 48 F. App'x. 961, 962 (6th Cir. 2002). Petitioner's failure to point to any evidence supporting a prima facie violation of the fair cross-section requirement defeats this claim. *Id.*

The Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from challenging potential jurors solely on account of their race. *Batson v. Kentucky,* 476 U.S. 79, 89 (1986). A criminal defendant may establish a prima facie case of purposeful discrimination in the selection of a petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. *Id.* at 96. To establish such a case, a defendant must show that he is a member of a cognizable racial group and that the prosecutor has used peremptory challenges to remove members of the defendant's race from the jury venire. The defendant must also show that these facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors from the petit jury on account of their race. These relevant circumstances include the pattern of strikes and the prosecutor's questions and statements. *Batson,* 476 U.S. at 96-97. Once the defendant makes a prima facie showing, the burden then shifts to the prosecutor to offer a "race neutral explanation" for challenging the jurors. *Id.* at 97. The prosecutor's explanation does not have to rise to the level which would justify the exercise

25

of a challenge for cause, but a prosecutor may not rebut a defendant's prima facie case of discrimination by simply stating that he challenged jurors of the defendant's race on the assumption that they would be partial to the defendant because they were members of the same racial group. *Id.* The trial court must then determine whether the defendant carried his burden of proving purposeful discrimination. *Id.,* at 98.

A "race neutral" explanation in the context of a *Batson* claim means "an explanation based on something else than the race of juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York,* 500 U.S. 352, 360 (1991). A race neutral explanation that is offered by the prosecution need not be persuasive or plausible; instead, the persuasiveness or the justification becomes relevant only when the trial court determines whether the opponent of the challenge has carried his burden of proving purposeful discrimination. *Purkett v. Elem,* 514 U.S. 765, 767-69 (1995).

In the present case, the prosecutor asked that the juror be stricken because he no longer resided in Monroe County. (Tr. 1/3/07, pp. 143-50). A juror's lack of residence in a county is a race neutral reason that defeats a *Batson* claim. *See e.g. McNair v. Campbell,* 416 F. 3d 1291, 1311 (11th Cir. 2005). Petitioner is not entitled to habeas relief on his sixth claim.

### H.  The reply brief.

In his reply brief, Petitioner for the first time appears to be raising additional claims

26

that were not raised in his initial habeas petition. Petitioner has also requested an evidentiary hearing and discovery.

A traverse or reply to an answer to a petition for writ of habeas corpus is not the proper pleading for a habeas petitioner to raise additional grounds for relief. *Burns v. Lafler,* 328 F. Supp. 2d at 724. "[A] court cannot consider new issues raised in a traverse or reply to the State's answer." *Id.* Because these claims are being presented for the first time in petitioner's reply brief, rather than in her habeas petition, this Court declines to address these claims, because they are not properly before this Court. *See Murphy v. Ohio*, 551 F. 3d 485, 502 (6th Cir. 2009).

The Court will also deny Petitioner's request for an evidentiary hearing. A habeas petitioner is not entitled to an evidentiary hearing on his claims if they lack merit. *See Stanford v. Parker,* 266 F. 3d 442, 459-60 (6th Cir. 2001). In light of the fact that Petitioner's claims are devoid of merit, he is not entitled to an evidentiary hearing. The Court will also deny Petitioner's request for discovery, in light of the fact that Petitioner's claims are without merit. *See Sellers v. U.S.,* 316 F. Supp. 2d 516, 523 (E.D. Mich. 2004).

### IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a

27

different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because she has failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002).  The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed.R.App. P. 24(a).

## V.  ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be denied leave to appeal *in forma pauperis*.


Dated:  February 19, 2014                         S/ Sean F. Cox_____
                                                  Sean F. Cox
                                                  U. S. District Court Judge

28

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DEXTER HARRIS,

                Petitioner,

                                    CIVIL NO. 2:12-CV-13658

v.                                  HONORABLE SEAN F. COX

                                    UNITED STATES DISTRICT COURT

KENNETH McKEE,

                Respondent.

_____/

PROOF OF SERVICE

I hereby certify that on February 19, 2014, the foregoing Opinion and Order was served upon counsel of record by electronic means and upon Dexter Harris by First Class Mail at the address below:

Dexter Harris #195335
Bellamy Creek Correctional Facility
1727 West Bluewater Highway
Ionia, MI 48846

Dated:  February 19, 2014                  S/ J. McCoy_____
                                          Case Manager

29